Woodrow L. WILSON and Patricia A. Wilson, Plaintiffs,

v.

Honorable Ray A. FENTON, of the Iowa District Court for Decatur County, Defendant.

No. 64973.

Supreme Court of Iowa.

Nov. 25, 1981.

Richard C. Turner, West Des Moines, for plaintiffs.

Jonathan C. Wilson and Steven L. Nelson, of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for defendant.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and SCHULTZ, JJ.

McCORMICK, Justice.

Plaintiffs Woodrow L. Wilson and Patricia A. Wilson brought this certiorari action to challenge an adjudication and sentence for contempt. The adjudication was based on their failure to convey merchantable title to farm land pursuant to a trial court decree. They challenge the validity of the contempt finding and the penalty. We find no merit in their attack upon the adjudication, but we find the penalty cannot stand. Therefore we annul the writ in part, sustain it in part, and remand for the assessment of a new penalty.

Wilsons were adjudged in contempt for failing to comply with a decree of specific performance of a contract for the sale of 2700 acres of farm land to Peter Youngblut. The decree was affirmed by this court in *Youngblut v. Wilson*, 294 N.W.2d 813 (Iowa 1980). The contempt proceedings occurred during the pendency of the appeal.

In attacking the contempt adjudication, Wilsons repeat two arguments which we rejected in the appeal. We held that they did not provide "merchantable title in accordance with Iowa Title Standards" as required by the real estate contract and the decree. *Id.* at 818. We also rejected their argument that abatement of the purchase price and foreclosure of a collateral assignment were effective remedies for their breach of duty. *Id.* We adhere to those holdings.

Wilsons urge several additional contentions. They allege the decree was unclear and allowed Youngblut's attorneys to decide compliance. They assert the decree was stayed by the appeal despite their failure to file a supersedeas bond. They also assert that less drastic remedies than contempt were available, the evidence did not show willfulness, and they established their defense of inability to comply.

In attacking the penalty, Wilsons contend that taxing them with Youngblut's attorney fees and costs was unconscionable and unauthorized. We will address the validity of the adjudication and penalty separately.

I. *Validity of the adjudication.* The decree of specific performance ordered Wilsons to "deliver abstracts showing merchantable title to [Youngblut's] attorney on or before December 1, 1979." Although Wilsons argue they did not know what the court meant by "merchantable title," the record shows otherwise. Youngblut's attorney had objected to the title principally because of a $76,000 mechanics lien filed against the premises by W. R. Grace and Company. In the specific performance action the trial court had denied Wilsons' attempted forfeiture of the contract in part because of their own default in failing to clear the W. R. Grace lien to make the title merchantable as required by the contract. In that context it is impossible to believe Wilsons did not know what the court meant in ordering them subsequently to deliver abstracts showing merchantable title.

■ Principles governing a vagueness claim in a contempt proceeding are summarized in *Callenius v. Blair*, 309 N.W.2d 415, 418 (Iowa 1981). Wilsons have fallen far short in their attempt to establish that the specific performance decree was vague under those principles. In addition to the evidence showing they understood what the specific performance decree required of them, the record shows they had used the same merchantable title concept in the real estate contract.

■ The merchantable or marketable title concept is basic in Iowa title law. A

title is merchantable if a person of reasonable prudence would accept the title in the ordinary course of business. *DeLong v. Scott*, 217 N.W.2d 635, 637 (Iowa 1974). In this case the parties had agreed that marketability was to be determined in accordance with the Iowa Title Standards. Under standard 1.1 a title is not marketable when it is subject to an encumbrance not "expressly provided for by the client's contract." *See* 36 I.C.A. (1980–81 Supp.) 50. The W. R. Grace lien was plainly such an encumbrance.

Wilsons desired to dispute the validity of the lien and did so in collateral litigation. However, rather than show the title was marketable, the existence of the dispute illustrates the wisdom and validity of Youngblut's objection to title. Youngblut had no obligation to participate in the dispute. He bargained for the farm, not for a lawsuit. So long as the encumbrance existed and the litigation continued, title was not merchantable within the meaning of the decree.

Wilsons' argument that the decree permitted Youngblut's attorney to decide whether they complied with the decree is similarly untenable. The marketable title concept and title standards provided an objective basis for measuring compliance with the decree.

We also reject Wilsons' arguments that the appeal stayed the original decree. Iowa R.App.P. 7(a) provides precisely to the contrary. Although the amount of supersedeas bond was fixed after hearing in the specific performance case, no bond was ever filed. Various stays obtained in connection with hearings relating to the bond had all expired on February 6, 1980, more than one month before the contempt action was initiated.

Nor does the record show the contempt adjudication was unwarranted because of the existence of another effective remedy. The alternative remedies suggested by Wilsons would either be ineffective or would impose burdens or risks on Youngblut which the contract and decree did not require him to bear.

Finally, we find no merit in Wilsons' contentions that the proof of willfulness was insufficient and that they proved their defense of inability to comply with the decree.

We do not review the evidence de novo. We examine it only to ensure that the proof of contempt was clear and satisfactory. *Callenius*, 309 N.W.2d at 419. Moreover, the alleged contemnor has the burden of proof on a defense of inability to comply. *Foust v. Denato*, 175 N.W.2d 403, 405 (Iowa 1970). The defense bears on the issue of willfulness. When a decree has not been obeyed, the defense allows the alleged contemnor to avoid an adjudication of contempt by proving a good faith effort was made to comply. *Id.*

In the present situation, Wilsons did not comply with the decree because they did not clear the W. R. Grace lien. In support of their defense of inability to comply, they showed only that they could not discharge the lien with income from the farm involved because they had lost the farm. They did not show their noncompliance with the decree was unavoidable despite a good faith effort to comply. In fact, the record contains evidence to the contrary. Even when the lien could have been satisfied from escrowed funds, Wilsons refused to consent to that procedure.

Clear and satisfactory evidence was adduced to show that Wilsons' failure to comply with the decree was motivated by a desire to resist it by every available means. Defendant district court did not err in finding their conduct was willful and unexcused by impossibility.

We have considered all of Wilsons' contentions and arguments concerning the contempt adjudication and find them unmeritorious. No error in the adjudication has been demonstrated.

II. *Validity of the penalty.* After finding Wilsons were in contempt of court for failing to comply with the specific performance decree, the court imposed the following penalty:

[Wilsons] shall have two (2) weeks from the date of this order to purge themselves of contempt by providing abstracts showing merchantable title to [Youngblut's] attorneys; failing to do so, they shall be fined the sum of $250.00 per day from and after that date, until the Decree is complied with. Said fine shall apply first for the benefit of [Youngblut] for his costs of gathering evidence and preparing for the hearing, including attorney fees. [Youngblut's] attorneys are directed to file an affidavit showing said costs and fees. If [Wilsons] shall purge themselves of contempt before the fine exceeds such costs and fees, [Wilsons] shall nonetheless pay a fine in the amount of said costs and fees.

Wilsons assert this penalty was unlawful because taxing them with Youngblut's attorney fees and expenses was unconscionable and unauthorized. We believe the issue of the court's authority to impose the penalty is determinative.

Defendant court contends the penalty was authorized under its inherent power in contempt cases and by statute. This court has recognized that an Iowa court's contempt power is inherent. *Lutz v. Darbyshire*, 297 N.W.2d 349, 354 (Iowa 1980). However, the court has also held that a statute limiting punishment for contempt is valid. *Eicher v. Tinley*, 221 Iowa 293, 297, 264 N.W. 591, 594 (1936): "... [W]e think the greater weight of authority on this proposition is that a limitation as to the punishment that may be imposed for contempt by a constitutional court is not such an interference with the inherent right of a court to punish for contempt as to prevent the enactment of such provision by the legislative branch of the state." In *Eicher*, the court held that the respondent court acted illegally in imposing a fine of $300 and sentence of 90 days when the applicable statute provided for a fine of $50 and imprisonment not exceeding one day.

Furthermore, this court has held that when the legislature enacts a comprehensive statute to regulate the contempt power, the statute is a constructive repeal of the common law on that subject. *See Drady v. Given*, 126 Iowa 345, 349, 102 N.W. 115, 117 (1905) ("the courts must in all cases be governed by the provisions of the statute").

The present contempt action was brought pursuant to chapter 665, The Code. Punishment is governed by section 665.4, which provides in material part:

The punishment for contempt, where not otherwise specifically provided, shall be:

. . . . .

2. Before district judges and district associate judges, by a fine not exceeding five hundred dollars or imprisonment in a county jail not exceeding six months or by both such fine and imprisonment.

Section 665.5 provides:

If the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it. In that case the act to be performed must be specified in the warrant of the commitment.

We believe these provisions limit the power of a district court to punish for contempt.

The statute addresses the whole subject of contempt penalties. It does not distinguish between civil and criminal contempts. *Knox v. Municipal Court*, 185 N.W.2d 705, 707 (1971). They are treated as criminal even when they arise, as in the present situation, from civil cases. *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980). Consequently the sanctions are not compensatory as they might be in a civil contempt proceeding. *See* Dobbs, *Contempt of Court: A Survey*, 56 Cornell L.Rev. 183, 267 (1971). The punishment in section 665.4 is punitive and the fine is for the benefit of the state. *Id.* Imprisonment under section 665.5 is a coercive remedial sanction. *Id.* Thus the statute provides for two types of punishment, "punitive for acts which, being done, are themselves completed contempts, and imprisonment to coerce the performance of affirmative acts ordered by the court." Note, *Civil and Criminal Contempt*

*In Iowa*, 20 Iowa L.Rev. 121, 127 (1934). Because no other sanctions are provided, no other sanctions are authorized.

▮ The monetary penalty under section 665.4 may not exceed $500 for a single contempt. Under section 666.3, the fine goes to the county school fund. It is true "fees of collection" are to be deducted. *Id.* However, we interpret that expression to mean the county's expenses and fees in the case, not the prevailing party's expenses in prosecuting the contempt action. *See Pottawattamie County v. Carroll County*, 67 Iowa 456, 25 N.W. 703 (1885).

▮ This conclusion is supported by our rule that the right to recover attorney fees as part of costs does not exist at common law. Attorney fees cannot be allowed in the absence of statutory or contractual authority. *Dole v. Harstad*, 278 N.W.2d 907, 909 (Iowa 1979). An example of a statute providing the necessary authority in a contempt situation is section 598.24. It authorizes recovery of attorney fees as part of the costs in dissolution of marriage contempt cases.

Cases on this subject are collected in *Annot.*, 43 A.L.R.3d 793 (1972). Our rule aligns Iowa with the jurisdictions which require statutory authority before attorney fees can be awarded in contempt cases. *See In re Marriage of Weisbart*, 39 Colo. App. 115, 564 P.2d 961 (1977); *City of Miami Beach v. Town of Bay Harbor Islands*, 380 So.2d 1112 (Fla.App.1980); *Brown v. Brown*, 237 Ga. 122, 227 S.E.2d 14 (1976), *overruled on other grounds, Ensley v. Ensley*, 239 Ga. 860, 238 S.E.2d 920 (1977); *Thomas v. Woollen*, 255 Ind. 612, 266 N.E.2d 20 (1971); *Johnston v. Beneficial Management Corp. of America*, 26 Wash.App. 671, 614 P.2d 661 (1980).

▮ We hold that the penalty for contempt in this case was limited by the provisions of sections 665.4 and 665.5. Those provisions do not permit taxing the prevailing party's costs of gathering evidence, including attorney fees, to the contemnee.

▮ We also hold that even though Wilsons did not challenge the $250 daily fine imposed by the court, that portion of the penalty is also invalid and cannot be permitted to stand. Just as sections 665.4 and 665.5 do not authorize an award of attorney fees, they do not authorize a fine in excess of $500 for a single act of contempt. Disobedience of the decree was a continuous contempt. It did not become a separate act of contempt with the passage of each day. Even if it did, no statutory authority exists for adjudicating it prospectively.

▮ In the criminal context we have often held that a sentence which is not permitted by law is void. *See, e. g., State v. Hopp*, 190 N.W.2d 836, 837 (Iowa 1971). We cannot permit a void sentence to stand even when a party does not raise the issue. *Gatton v. Brewer*, 268 N.W.2d 185, 188 (Iowa 1978); *State v. Stevenson*, 195 N.W.2d 358, 360 (1972). Because of the criminal nature of the contempt action, we apply that principle here.

It appears the court was attempting to impose a coercive remedial sanction by a kind of order that is not uncommon in the federal court and some state courts. *See Labor Relations Commission v. Fall River Educators Association*, —— Mass. ——, 416 N.E.2d 1340, 1348 (Mass.1981) ("We are aware of no case in which the imposition of such a fine has been held to be beyond the authority of a court."). However, the penalties which can be imposed for contempt are not limited by statute in those jurisdictions. For example, the federal statute merely codifies the court's inherent power and does not prescribe penalties. *See* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority ...."). A prospective fine for each day of noncompliance is within a federal court's discretion under the statute. *Latrobe Steel Co. v. United Steelworks of America, AFL–CIO*, 545 F.2d 1336, 1344 (3rd Cir. 1976).

▮ The subject is preempted by statute in Iowa. Section 665.4(2) limits the fine for a single contempt to $500. The fine can be levied retrospectively for separate acts of contempt. *Clark v. District Court*, 255

Iowa 1005, 1010, 125 N.W.2d 264, 268 (1963). However, the statute does not authorize a prospective daily fine as a coercive remedial sanction. Instead, section 665.5 provides the sanction in that situation. When the contempt consists of the failure to perform an act which the contemnor has power to perform, "he may be imprisoned until he performs it." *Id.* In a case in which the provision was used, the express statutory authorization was noted. *See Coyle v. Sawyer*, 198 Iowa 1022, 1028, 200 N.W. 721, 723 (1924). Because the legislature has occupied the field but has not authorized a prospective daily fine as a coercive sanction, we hold that an Iowa court lacks authority to enter such an order.

Therefore we annul the writ of certiorari in its challenge to the contempt adjudication but we sustain the writ in its challenge to the penalty. We remand to permit assessment of a new penalty. The court has authority to fine and imprison the Wilsons within the limits of section 665.4(2). We understand that the issue of a sanction under section 665.5 is moot.

WRIT ANNULLED IN PART, SUSTAINED IN PART, AND CASE REMANDED.